**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-23271-BLOOM**

NEIL LARAMENDI NAVARRO,

Petitioner,

v.

MIAMI ICE FIELD OFFICE DIRECTOR,

Respondent.
______________________________________/

**ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** is before the Court upon Petitioner Neil Laramendi Navarro's ("Petitioner") Amended Petition for Writ of Habeas Corpus ("Amended Petition"), ECF No. [5]. The Court issued its Order to Show Cause, ECF No. [3], and Respondent filed a Response, ECF No. [8], to which Petitioner filed a Reply, ECF No. [9]. The Court has considered the Amended Petition, the supporting and opposing submissions, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, the Amended Petition is granted.

## I. BACKGROUND

Petitioner, a native and citizen of Cuba, has resided in the United States since 1970. ECF No. [5] ¶ 1. Petitioner was ordered removed to Cuba in 2006 after serving a prison sentence. *Id*. For the past five years, Petitioner has been compliant with an Order of Supervision ("OSUP"). *Id.* On May 7, 2026, Immigration and Customs Enforcement ("ICE") agents took Petitioner into custody following a traffic stop. *Id*. ¶ 3. ICE did not explain its reasons for revoking Petitioner's OSUP. *Id*. ¶ 4. ICE provided no written explanation, no finding of a violation, and no opportunity for Petitioner to respond during an informal interview. *Id.*

Petitioner argues his detention without the opportunity for individualized review violates the Due Process Clause of the Fifth Amendment and the *Accardi* Doctrine in that Respondent violated the notice, interview, and opportunity to respond requirements of 8 C.F.R. § 241.4. ECF No. [5] at 12-16. Petitioner requests that he be released from custody immediately, to enjoin the Respondent from re-arresting or re-detaining Petitioner absent full and strict compliance with federal law, and to grant attorneys' fees and costs. *Id*. at 16.

Respondent responds that the Court lacks jurisdiction to review Petitioner's claims and that it properly revoked Petitioner's OSUP to effectuate Petitioner's removal. ECF No. [8] at 7-9. Respondent served Petitioner with a Notice of Revocation of Release on May 7, 2026, and provided an informal interview on that same day. ECF Nos. [8-6]; [8-7]. Respondent contends it served Petitioner with a second Notice of Revocation of Release on May 15, 2026, and Petitioner was afforded another opportunity to respond in an informal interview. ECF Nos. [8-7]; [8-8]. Respondent argues it followed the regulatory procedures required to revoke Petitioner's OSUP consistent with 8 C.F.R. § 241.4. ECF No. [8] at 8.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. §2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. §2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### A. Jurisdiction

As an initial matter, Respondent argues that the Court lacks jurisdiction to review ICE's

decision to revoke Petitioner's release and take him into custody because those actions were taken for the purpose of executing a final order of removal. ECF No. [8] at 7-8. While § 1252(g) "bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal basis for those discretionary decisions and actions." *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006). "The Eleventh Circuit has consistently held that even where the statutory framework grants agency discretion, courts have jurisdiction to review whether an agency adhered to its own regulations and procedures." *See Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) (citing *Kurapati v. U.S. Bureau of Citizenship and Immig. Services*, 775 F.3d 1255, 1262 (11th Cir. 2014) (finding that § 1252(a)(2)(B)(ii) did not prevent the Court from assessing whether the government followed its procedures when it revoked petitioner's visa petition)).

Petitioner does not challenge the underlying removal order. *See generally* ECF No. [5]. Petitioner also does not challenge that Respondent may revoke an order of supervision. *Id*. Rather, Petitioner challenges Respondent's *compliance* with permissible bases to revoke an OSUP and proper OSUP revocation procedures. Therefore, jurisdiction is proper. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (holding that "district courts . . . have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not."); *Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1249 (S.D. Fla. 2025) (holding that § 1252(g) did not strip the court of jurisdiction to evaluate whether the government complied with OSUP revocation procedures).

**B. Unlawful Revocation of OSUP**

Petitioner argues that under the *Accardi* doctrine — which requires agencies to follow their own binding regulations — revocation requires notice of the reasons for revocation and a prompt interview to respond. ECF No. [5] ¶ 50. Respondent argues that Petitioner's OSUP was revoked

to effectuate a removal order under 8 C.F.R. § 241.4, and Petitioner was "provided with a Notice of Revocation of Release and an informal interview consistent with the regulatory procedures." ECF No. [8] at 8 (citing ECF Nos. [8-7], [8-8]).

The basic premise of the *Accardi* doctrine, drawn from *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), is that "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984). Furthermore, it "goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).

Thus, the Court begins by discussing the applicable regulations. Respondent contends it properly revoked Petitioner's OSUP under § 241.4. ECF No. [8] at 8. Under § 241.4, there are two broad categories for revocations of release. Section 241.4(l)(1) covers revocation in response to a violation of the conditions of release. For those detained pursuant to § 241.4(l)(1), the regulation requires notification of the "reasons for revocation of his or her release or parole," as well as "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). Section 241.4(l)(2) is broader and includes cases where "[t]he purposes of release have been served," "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2)(i),(ii),(iv). Though § 241.4(l)(2) does not contain the same notice and interview requirements, courts have "interpreted section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the

reason for the revocation" — that is, the notice and informal interview requirement found in § 241.4(1)(1) applies to revocation under § 241.4(1)(2). *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (collecting cases); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 410 (S.D.N.Y. 2025) ("[P]aragraph (l) sets forth a unified set of procedures for the revocation of removal."); *Grigorian*, 824 F. Supp. 3d at 1252. Here, where there is no allegation that Petitioner violated any conditions of his release, § 241.4(l)(2) applies. Thus, the Court turns to considering whether the procedures required by § 241.4(l)(2) have been followed.

The Court begins with the notice requirement. "The undisputed purpose of this requirement is to give the non-citizen an opportunity to respond to or otherwise contest the reasons for the revocation." *Zhang v. Genalo*, 814 F. Supp. 3d 307, 324 (E.D.N.Y. 2025). Petitioner was taken into Respondents' custody on May 7, 2026. ECF No. [5] ¶ 3. On that date, Respondent provided Petitioner a Notice of Revocation of Release, ECF No. [8-6] (the "May 7, 2026 Notice") and contends that Petitioner "was given an informal interview regarding the reason for revocation." ECF No. [8-7] ¶ 17. The May 7, 2026 Notice has a box checked indicating Petitioner's OSUP was revoked under § 241.13 because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." ECF No. [8-6] at 1. Based on the purpose of the notice requirement, the May 7, 2026 Notice was plainly insufficient because it did not inform Petitioner of the reason his OSUP was revoked. That is, Respondent now asserts that Petitioner's OSUP was revoked to effectuate a removal order under 8 C.F.R. § 241.4, ECF No. [8] at 8 — a reason different from the one stated in the May 7, 2026 Notice. Thus, the Court finds that the May 7, 2026 Notice provided insufficient notice of ICE's basis and reasons for revoking Petitioner's OSUP and did not afford Petitioner a meaningful opportunity to respond to or otherwise contest the reasons in the corresponding informal interview. *See Grigorian*, 824 F. Supp.

3d at 1255 ("The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands."). The May 7, 2026 Notice and informal interview are therefore insufficient to satisfy 8 C.F.R. § 241.4.

The Court now turns to Respondent's actions taken after Petitioner filed the Amened Petition. On May 15, 2026, Respondent provided Petitioner a second Notice of Revocation of Release. ECF No. [8-8] (the "May 15, 2026 Notice"). The May 15, 2026 Notice has a box checked indicating that under § 241.4 Petitioner's OSUP was revoked because "[i]t is appropriate to enforce the removal order against you as ICE has the ability and means to effectuate your removal." *Id*. at 1. Respondent also provides the Declaration of Deportation Officer Gonzalo Partidas Jr. ("Partidas") who states that Petitioner rejected a second informal interview on May 15, 2026. ECF No. [8-7] ¶ 19.

Petitioner replies that other than Respondent's bare assertion, there is no evidence that any informal interview ever occurred, much less one that complies with due process. ECF No. [9] at 2. Moreover, Petitioner points out that Respondent's inexplicably toggle from revoking Petitioner's OSUP under § 241.13 to § 241.4 between the two Notices of Revocation of Release. *Id.* Petitioner also contends that Respondent relies on "a declaration from ICE personnel that is not based on personal knowledge" and that Respondent's "vague and unsubstantiated claims to have conducted an informal interview" are unreliable and are not "in conformity with any semblance of due process." ECF No. [12] at 1-2. Respondent has failed to rebut this assertion. *See generally* Docket.

Petitioner alleges that he was never given the required informal interviews to respond to the Notices of Revocation, and the only evidence provided by the Respondent that such an interview took place is the Declaration of Partidas, who states that Petitioner was afforded an

interview on May 7, 2026, and Petitioner declined an interview on May 15, 2026. ECF No. [8-7]. The Court finds Partidas' Declaration unreliable as he provides no factual support for his statement. Indeed, Partidas grounds his Declaration in the fact that he was familiar with Petitioner "based on my review of his administrative file and the information detailed in ICE's electronic databases." *Id.* ¶ 3. Partidas has no personal knowledge of whether the informal interview occurred or was rejected. Such a conclusory Declaration is insufficient to establish that an interview took place. *See Olivera Loaces v. Miami ICE Field Office Director,* 26-cv-24134-JEM (S.D. Fla July 16, 2026); *see also Jose Manuel Barcenas Toruno v. Christopher J. Larose*, 26-cv-104-RSH-DEB (S.D. Cal Feb. 26, 2026) ("The Court has no alternative but to credit Petitioner's own sworn statement, uncontradicted by evidence, that he did not receive such an interview").

The question, then, is whether the lack of sufficient notice and interview render Petitioner's detention unlawful, such that release is the appropriate remedy. Among courts that have confronted similar issues, the majority hold that the failure to provide adequate notice upon revocation of an order of supervision is grounds for release. *See, e.g.*, *Losada Diaz v. Parra*, No. 25-22624-CV, 2026 WL 1223375, at *5 (S.D. Fla. Jan. 25, 2026); *La Rosa Hernandez v. Parra*, No. 26-21701 CIV, 2026 WL 1221818, at *6 (S.D. Fla. Apr. 2, 2026); *Lugones v. Parra*, No. 26-21615-CIV, 2026 WL 1223378, at *6 (S.D. Fla. Mar. 30, 2026). Similarly, most courts find that a substantial delay in affording an informal interview means that the re-detention violates ICE's regulations and the petitioner's constitutional rights to due process, thus warranting release. *See, e.g.*, *Banega v. Warden of Soft Side S. Facility*, No. 2:25 CV-1152-JES-DNF, 2026 WL 234042, at *3 (M.D. Fla. Jan. 29, 2026); *Cabrera v. Warden Alcatraz*, No. 2:26-CV-01384-SPC-NPM, 2026 WL 1336255, at *1 (M.D. Fla. May 14, 2026); *Jean-Baptiste v. Mullin*, No. 3:26-CV-484-MMH-LLL, 2026 WL 1109483, at *2 (M.D. Fla. Apr. 24, 2026); *Bui v. Warden of the Otay Mesa Det. Facility*, No. 25-

CV-2111 JES DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23, 2025); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025). The Court agrees with the reasoning in those cases. Where ICE fails to follow its own regulations in re-detaining a petitioner — the very regulations designed to protect the petitioner's due process rights—the petitioner is entitled to release, just as much as the petitioner would be if his due process rights were violated in any other manner. *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1165 (S.D. Cal. 2025) ("ICE's failure to follow such regulations thereby also violated Petitioner's constitutional due process rights.").

Ultimately, the Court finds that the Government was not entitled to detain Petitioner without offering him an actual account of its reasons for doing so and a meaningful opportunity to contest those reasons. Indeed, "if men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). The Court thus finds that Petitioner must be released from custody.

Because the Court finds release is warranted under the *Accardi* Doctrine, the Court need not address Petitioner's other arguments. The Amended Petition is granted.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner's Amended Petition for Writ of Habeas Corpus, **ECF No. [5]**, is **GRANTED**.
2. Respondent shall release Petitioner from custody **IMMEDIATELY**, pursuant to the terms of Petitioner's prior Order of Supervision. Respondent shall file a notice with the Court within 48 hours confirming Petitioner's release in compliance with this Order.
3. The Clerk is directed to **CLOSE** this case.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 9, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record